AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One Apple iPhone, Model A1661<br>FCC ID: BCG-E3087A<br>FP&F No. 2020250600035401, Line Item 003 | ) ) ) ) ) ) Case No.  20MJ0385 |

FILED
JAN 29 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the      Southern      District of      California     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of Methamphetamine and Conspiracy |

The application is based on these facts:

See attached Affidavit of Special Agent Guillermo Diaz, Homeland Security Investigations

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

S.A. Guillermo Diaz, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/29/2020

*Judge's signature*

City and state: San Diego, CA          Hon. Barbara L. Major United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Guillermo Diaz, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> Apple iPhone
> Model: A1661
> FCC ID: BCG-E3087A
> FP&F No. 2020250600035401, Line Item 003
> ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960 and 963, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Marina GAXIOLA ("GAXIOLA") for importing approximately 15.34 kilograms (33.75 pounds) of methamphetamine from Mexico into the United States. The Target Device is currently in the possession of Homeland Security Investigations located at 880 Front Street, San Diego, CA.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I have been employed as a Special Agent with Homeland Security Investigations since February 2011. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

1

5. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

- a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

- b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

- c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

- d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

- e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

- f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9. On January 15, 2020, at approximately 11:45 p.m., GAXIOLA applied for permission to enter the United States at the Otay Mesa Port of Entry. Defendant was the driver and sole occupant of a 2003 Infiniti G35. GAXIOLA was referred for secondary inspection, and Customs and Border Protection Officers discovered 30 packages concealed within the gas tank of GAXIOLA's vehicle. The packages weighed approximately 15.34 kilograms (33.75 lbs.), and field-tested positive as methamphetamine. GAXIOLA was subsequently arrested and the Target Device was seized from her. During her interview GAXIOLA told investigators the Target Device belonged to her and provided the phone

number for the device.

10. Later, agents read GAXIOLA her *Miranda* rights, and after initially invoking, she reintitated contact and agreed to speak to agents without an attorney present. GAXIOLA denied knowledge of the drugs in her vehicle. GAXIOLA told investigators she was willing to take responsibility for the drugs in her vehicle since she was driving; however, she continued to deny knowing they were in the gas tank. GAXIOLA began to tell Investigators about what she was doing in Mexico but did not want to tell investigators any details, names, or places she was. When confronted with her evasive behavior, GAXIOLA again decided she wanted to invoke her right to an attorney. All questioning ceased at that time.

11. In light of the above facts, GAXIOLA's statements, and my own experience and training, there is probable cause to believe that GAXIOLA was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States.

12. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on December 15, 2019 to January 16, 2020, which is the day following GAXIOLA's arrest.

## METHODOLOGY

13. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be

4

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

//

//

5

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

16. On January 22, 2020, Magistrate Judge Bernard G. Skomal issued a search warrant for me to search the Target Device. Case No. 20-MJ-0263 (S.D. Cal.). The address on the search warrant was accurate, but it stated the Target Device was in the HSI Evidence Vault at that location. Target Device was, and is, in the possession of HSI Certified Forensic Analysts at that address rather than in the evidence vault. The search warrant requests a new warrant to correct that statement. Law enforcement agents have not began downloading the Target Device pursuant to the warrant issued by Judge Skomal.

**CONCLUSION**

17. Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of GAXIOLA's violations of Title 21, United States Code, Sections 952, 960 and 963.

18. Because the Target Device was seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Device. As stated above, I believe that the appropriate date range for this search is from December 15, 2019 to January 16, 2020.

19. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Guillermo Diaz
Homeland Security Investigations

Subscribed and sworn to before me this 29th day of January, 2020.

_____
Hon. Barbara L. Major
United States Magistrate Judge

6

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple iPhone
>Model: A1661
>FCC ID: BCG-E3087A
>FP&F No. 2020250600035401, Line Item 003
>("Target Device")

The Target Device is currently in the possession of Homeland Security Investigations, 880 Front Street, San Diego, CA.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 15, 2019 to January 16, 2020:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.